All right, our fourth case for this morning is United States v. Patel. Are you Mr. Euler, or how do you pronounce your name? You got it, Judge. All right, Mr. Euler. The district court calculated Manish Patel's sentencing guideline range of 41 to 51 months before imposing a below guideline sentence of 38 months. We submit that the accurately correct calculated guideline range is 27 to 33 months and that a new sentencing hearing is necessary. There are two guideline errors that make up for that four level difference between the guideline ranges that I propose. The first error relates to the denial of a minor role reduction. The second relates to the application of the enhancement under section 2B1.1 sub B sub 10 of the guidelines. Can we start with the minor role? Because the district judge said, and I found this almost a matter of common sense, an awful lot of money moved through Mr. Patel's hands, and so even if there were other people who were quite culpable, this sure didn't look minor. Your Honor. Or at least on a clear error standard of review, am I prepared to say the district court had no reason to come to the conclusion it did? Judge, I don't think that the amount of money that passed through Mr. Patel's hands is irrelevant to the minor role reduction analysis, but I don't think it's dispositive of that analysis either. And the commentary to the guidelines provides really three factors that I think are salient to an analysis in this type of case. The first is where someone performs a limited function in the criminal activity. The second specifically relates to a fraud case that says where a defendant is accountable for a loss amount that greatly exceeds the defendant's own personal gain. And then the third relates to a defendant who had limited knowledge of the scope of the scheme. And each of those describe Manish Patel. How can you say he performed a limited function here when in addition to, as Judge Wood points out, he moved a lot of money? He also did so using over 100 fake IDs. He went throughout the country to pick it up. He was sending it to others, correct, but he was vital to having the scheme accomplished. I don't disagree with that, Your Honor. And this court has repeatedly said that someone being essential or having an essential role in a criminal conspiracy or a fraud scheme, again, while relevant. But coming in part on the commentary that says one of the factors a court should look at is whether or not the defendant performed a limited role. And given those facts, how can you claim that's a limited role? So taking a look at the scope of the fraud scheme, and this court has also instructed that courts to compare for a defendant seeking a minor role reduction, to compare him to the average scheme participant or average participant in the criminal activity. And in this fraud scheme, it was structured in a way to insulate the courier, the person who was picking up the funds at the end of the fraud,  This conspiracy involved people orchestrating, locating the victims, calling the victims. But he's aware that it's an arrangement of a very wide scope because he knows how much money it is. He knows how many victims there are. As Judge St. Neve says, he has all these fake IDs to facilitate things. There are tremendous numbers. I just don't see on the third branch. He knows it's not just some limited little thing. Well, so as to the effect... He takes economic advantage of the fact that it's not a little thing because he stands to make a 4% commission on all the money he picks up. That's why he's driving around the United States and doing this.  He's making money all the time. Correct. And the court has instructed to look, again, to compare the defendants to the... But his point is it's not purely a comparative exercise because if it were purely a comparative exercise, then in every single case involving three or more co-defendants, somebody would always wind up with a minor role adjustment. But that's clearly not the way the system works. I think an apt comparison in this case is a drug conspiracy. And picture a courier who knowingly is transporting a very large amount of methamphetamine from Minnesota to Wisconsin and knows there's a lot of methamphetamine. The court has said that a courier, in that instance, can be considered a minor participant. Maybe if it's the one instance. But say that same courier does that 100 times or more. Your Honor, I cite... I can't recall the case off the top of my head. I'll have it in my rebuttal. But there's a case that says from this court that even if it's the same limited function over and over and over again, it isn't dispositive of the analysis. I submit that it's certainly relevant. It's something that the court can consider. I just don't think it's dispositive of that. The defendant here admitted to the court that he was more culpable than his co-defendant... Correct. ...who did not get a minor role reduction. Doesn't that limit, especially because the guideline says the minor role applies if you were less culpable than most of the other participants? So comparing my client to his co-defendant, he was more culpable than her. But comparing my client to the average scheme participant, my client was less culpable. And another reason I think the comparison to the co-defendant wife is significant is because her offense level was calculated using a lower loss amount. So my client was held accountable for all the money that passed through his hands where the co-defendant was responsible for a lesser amount. But wasn't that because the lesser amount was what she was responsible for or what was reasonably foreseeable to her as opposed to your client? I think there's an argument there, certainly as to the level of responsibility in terms of reasonable foreseeability. I think that my client's wife was well aware of what was happening. But the comparison to what the court did with Ms. Shukla, Mr. Patel's wife, is also relevant to the second issue, the 2B1.1 sub B sub 10. And if it was improper to give Mr. Patel the minor role reduction because Ms. Shukla didn't get it, it would create foreign land or foreign overseas involvement. But the thing is, I had a problem with the way the district judge phrased this. It sounded like, oh, obviously some of it was outside the United States. Unfortunately, there are dishonest people in the United States as well. But Mr. Patel said that he knew that the directors of the scheme were in India. So it didn't seem to me like it was a close case on whether this was focused on a place outside the United States. And that has all sorts of enforcement implications. It means that the government may really not be able to get the ringleaders. Mr. Patel didn't say that the offense, that the leaders of the offense occurred overseas. There was a plea agreement. No, he admitted in his plea agreement, Patel knew where to pick up the money grams and which fraudulent driver's license to use because members of the conspiracy located in India would communicate that information to Patel. The plea agreement and the government, the prosecutor drafted the plea agreement in this case. But Mr. Patel speaks English. He signed it. And he admitted to it under oath. Well, his admissions in the plea agreement relate to his conduct. But it shows he knows that this is an arrangement based in India. He's getting his instructions from them. So even though the district judge may have been a little casual in how he put it, given that language, I don't see why that wouldn't be a permissible use of the guideline enhancement. The plea agreement contemplated Mr. Patel not agreeing to that enhancement. Right. But this is a fact. This isn't a sentencing calculation point. I see I have about a minute left. If you would like to save a minute for your rebuttal, that would be fine. Mr. Corey. May it please the court. My name is Zach Corey, and I represent the appellee of the United States. This case presents three issues, the first of which is whether the district court committed clear error when it held that the minor role reduction did not apply to the defendant, Manish Patel. There was not clear error here, because clear error only occurs when this court views, quote, the evidence and concludes with definite and firm conviction that a mistake has been committed. Regarding the standard of review, this court has also stated, quote, because the sentencing court is in the best position to evaluate the defendant's role in the criminal activity, this court will rarely reverse a determination under this part of the guidelines. At the district court level, Mr. Patel bore the burden of showing by a preponderance of the evidence that the minor role adjustment was justified in his case, and he would do that by showing he was substantially less culpable than the average participant in the conspiracy. In order to assess relative culpability, it's necessary. But let me point your attention to the statement that I've been complaining about that the district court made. When they're discussing the 2B1.1B10 enhancement, the district court says, no reasonable person would come away from this unfortunate scheme with the other than it was hatched and perpetrated from afar. I don't know where he gets that. I mean, there's. Your Honor, the language in the plea agreement. It's just wrong. The language in the plea agreement makes that a correct statement, and also the unobjected two facts in the PSR. No reasonable person would think that you couldn't have a scheme like this that was homegrown? No, he didn't say that. Any scheme. Well, he sort of does say that, though. I took him to mean that this scheme, this particular scheme, which were the facts that were admitted in the plea agreement and the PSR. Also, didn't the district court judge find that 2B1.1B10 applied under a different provision, subsection C, the sophisticated means provision, and then made some commentary about the other provisions, including substantially committed outside of the United States, applying as well? Yes, Your Honor. His clear language says sophisticated means certainly applies, and then turning to foreign schemes says maybe that applies, but maybe not beyond a reasonable doubt, and then goes on to make the comments that Chief Judge Wood said. So he did find under both, as did probation in the PSR. And as I point out in my brief, that issue, the sophisticated means was not raised in the opening brief, so it was also waived. Can I ask you to comment on what you see as the procedural soundness of the sentencing? The one thing that struck me about reading the sentencing transcript is the district court made very clear that its views of the offense conduct here, and how outrageous it thought the defense conduct was, and the whole comment about wanting to send a shot across the bow and what have you. But as defense counsel points out, there wasn't much discussion at all of the need to avoid unwanted sentencing disparities, low risk of reoffending, lack of a prior record. All of the things that we think are attributes, have set our attributes of a sound sentence procedurally under 3553, and consistent with the Supreme Court's decision in Gaul. I'd like you to comment on that. Sure, Your Honor. As this court touched on in the earlier arguments regarding disparities, a properly calculated guideline goes a long way to meeting those requirements. And there wasn't as much, I agree with your characterization, there wasn't as much comment as there was on those issues as there was the victim. Was there any? The district judge is very upset with the offense conduct. I totally understand that. Was there any discussion of the other factors? I believe he commented. I'm not totally sure to the extent he addressed it, but he certainly did within the properly calculated guidelines in the category one no points on criminal history, which showed that. He talked about the deportation consequences as well afterwards. So turning to the third issue which was raised, which is in the reply brief about whether the judge adequately addressed the deterrence issue, that issue was impliedly rejected when the judge made his comments about let the word get out like a shot across the bow. And as this court has held, as long as the sentencing court considers the arguments made in mitigation, even if implicitly and imprecisely, no procedural error occurs. So if there is no further questions, I ask this court to affirm the district court. All right. Thank you. Mr. Euler. Thank you. As to the point that I said, I would, I would come back and address the, the case that holds that a repetitive minor activity doesn't disqualify someone as the liceness case from, from this circuit as to the judge. Your questions about the plea agreement. I agree. Mr. Patel signed the plea agreement and it has the language that the court referenced. Mr. Patel objected prior to sentencing to the, to the application of the guideline, arguing that there's no evidence in this case that the offense was committed or parts of the offense, let alone a substantial part of the offense was committed from overseas. Does that matter? Given the sophisticated means alternative under the same guideline. So in the, in, in the court's remarks, judge Stadmiller said that the two, there's the three applications of 2B1.1 and judge Stadmiller said two of them may arguably apply, but subsection C definitely applies. And then he went on to mention the remarks that the court, the court referenced about no one would walk away from this unfortunate scheme with the fact, anything other than the fact that it was hashed and perpetrated from afar. So I don't think judge Stadmiller found there were sophisticated means, but only finding that was made was that it was perpetrated from afar. Okay. We'd ask the court to grant a new sentencing. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.